UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

CORINE BRADLEY,

       Plaintiff,

v.

THE CITY OF MIAMI,

       Defendant.
_____/

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff, CORINE BRADLEY,[1] brings this Complaint against the CITY OF MIAMI[2] and seeks injunctive, declaratory, and equitable relief. In support thereof, Ms. Bradley states the following:

**THE PARTIES, JURISDICTION, AND VENUE**

At all times material to this action:

1.    Plaintiff, Ms. Bradley, was a citizen of the State of Florida, and a resident of Miami-Dade County, Florida.

2.    Defendant, the City of Miami, is a public entity incorporated under the laws of the State of Florida.

3.    The City of Miami created a Nuisance Abatement Board (the "Board") to resolve controversies over the existence of public nuisances in the City of Miami. Section 46-4(d) of the

---

[1] Hereafter referred to as "Plaintiff" or "Ms. Bradley."
[2] Hereafter referred to as the "Defendant," the "City of Miami" or the "City."

1

City Code of Ordinances provides that "[a]ny findings or orders from [the Board] are valid and binding upon the violator(s)."

4.  This Court has jurisdiction over this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331.  Ms. Bradley also requests this Court to exercise supplemental jurisdiction over her state law claim pursuant to 28 U.S.C. § 1367(a) because it arises out of the same operative nucleus of facts.

5.  Venue is proper because the events giving rise to this claim all occurred within Miami-Dade County, Florida.

## FACT GIVING RISE TO THE CLAIM

6.  Ms. Bradley is the owner of Bradley's Market, located at 1139 NW 2nd Avenue, Miami, FL 33136 in the Overtown neighborhood.

7   The entrance to Bradley's Market and its outer walls adjoin NW 2nd Avenue's sidewalk, which is City of Miami property.  Unlike other stores and businesses, Bradley's Market does not have a "set-back" from the sidewalk.  *See* "Exhibit A."

8.  Ms. Bradley has owned and maintained her business for over forty years, and before this incident, she had never received a nuisance or code violation.

9.  On September 6, 2016, the City of Miami filed a complaint against Bradley's Market pursuant to Section 46-3(a) of the City Code and requested that the Nuisance Abatement Board declare the store a public nuisance.  *See* "Exhibit B."  The City alleged that on at least three occasions between April and June of 2016, the Miami Police Department ("MPD") made nine arrests at Bradley's Market of persons involved with narcotics related activities.  *See* "Exhibit B."

10.  Contrary to the City's allegations, none of the drug sales actually took place inside

Bradley's Market or on the property. According to police reports,[3] some of the drug sales took place on the public sidewalk of NW 2nd Avenue, which adjoins the property, and at least four occurred on NW 1st or NW 3rd avenue. Ultimately, the State Attorney's Office declined to prosecute most of the arrestees who were cited in the City's complaint. *See* "Exhibit C."

11. On September 28, 2016, the Nuisance Abatement Board conducted a hearing pursuant to Section 46-4 of the City Code. Ms. Bradley argued that none of the drug sells occurred on her property and that she cannot control what happens outside of her property, especially on a public sidewalk. Nevertheless, the Board declared Bradley's Market a drug-related nuisance, in violation of Florida Statutes Chapter 893 and City of Miami Ordinance 46-1(2) and (3). *See* "Exhibit D."

12. Based on its erroneous finding, the Board ordered Ms. Bradley to take the following steps pursuant to section 46-5(b)(1): (1) take all necessary steps to abate the nuisance; (2) meet with Commander Carr or another representative of the City of Miami Police on a monthly basis; (3) ensure that the property is not in violation of local laws; (4) remove debris from the sidewalk; (5) remove the bamboo from the metal fence in the rear of the property; (6) install adequate lighting; (7) **install security cameras which allow for the Miami Police Department to receive uninterrupted remote-live feed access to the property**; and (8) execute an updated "No Trespassing" affidavit to empower the MPD to remove persons from Bradley's Market without warning. *See* "Exhibit D."

13. The City stated that it would exercise jurisdiction over the property for a period of one year and would only take action in the event of a recurrence of the nuisance related activity.

---

[3] Ms. Bradley contests the facts alleged in the reports.

*See* "Exhibit D."

14. On February 2, 2017, the Board declared Bradley's Market a continuing nuisance and issued Ms. Bradley a $750 fine pursuant to section 46-5(b)(4). The $750 total stemmed from Ms. Bradley's alleged failure to perform each of the following directives: remove the bamboo from the metal fence ($250); install adequate lighting ($250); and install security cameras with uninterrupted remove live-feed access to the MPD ($250). *See* "Exhibit E."

15. On February 22, 2017, Ms. Bradley appeared in front of the Board and provided evidence to show that she has complied with every Board directive listed above, except the one requiring her to give MPD 24-hour live feed monitoring to her property.

16. Ms. Bradley did purchase and install surveillance equipment on her property. However, she made it clear that she would not give the MPD remote live-feed monitoring access, as such governmental mandate violates the Fourth and Fifth Amendment to the United States Constitution.

17. The Board stated that its 24-hour live-feed monitoring order was lawful because it would help reduce crime in Overtown. The Board also explained that it has ordered live-feed monitoring upon several other property owners in the area.

18. On February 24, 2017, Counsel delivered a letter to the Board's attorney, which expressed his concerns over the legality of its Order and tried to amicably resolve this issue.[4] *See* "Exhibit F." On March 2, 2017, the Board issued a formal Order memorializing its February 22nd ruling which required Ms. Bradley to provide MPD with 24-hour live-feed surveillance to her property. *See* "Exhibit G." The Board also issued Ms. Bradley a notice to appear at a hearing on

---

[4] Counsel also copied the City Manager and City Attorney.

March 22, 2017.

19.     At the March 22, 2017 hearing, Ms. Bradley formally requested the Board to reconsider its March 2, 2017 Order.  Counsel provided the Board with United States Supreme Court precedent and other federal cases which clearly show that its requirement to purchase and install 24-hour live-feed remote surveillance monitoring violates the Takings Clause and the Fourth Amendment.[5]

20.     Undeterred by logic or Supreme Court precedent, the Board found Bradley's Market to be a continuing nuisance and still ordered her to provide the MPD with 24-hour live-feed remote video access to her property.  The Board also fined her $2,000 for: (1) failing to provide the MPD with uninterrupted remote live-feed access to her security cameras; (2) failing to meet with representatives of the City of Miami Police; (3) failing to take steps to provide the necessary adequate lighting; (4) and failing to avoid having customers **loiter** at Bradley's Market.  *See* "Exhibit H."

21.     The Board's Order is rather questionable because Ms. Bradley provided the Board with text messages showing that she attempted to contact the Commander who she was supposed to meet with, but the Commander never responded to her messages.  *See* "Exhibit I."  Ms. Bradley also provided the Board with photographs showing that four "dusk to dawn" lights are currently installed on the outside of her property, as the Board had previously requested.  *See* "Exhibit J."  The Board members ignored what was before their very eyes.

---

[5] Counsel cited the following cases, which he had previously emailed to the Board's counsel and the City Attorney's office: *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982); *Shafer v. City of Boulder*, 896 F. Supp. 2d 915 (D. Nev. 2012).

22.     Equally shockingly, however, the Board found Ms. Bradley's property to be a continuing nuisance because, although there were no arrests for drug sales, five people had been arrested for "trespassing."[6]  It is mind-boggling how the Board could force Ms. Bradley to put up "No Trespassing" signs, but then issue her a fine after MPD actually made trespassing arrests.

23.     The Board's ruling was so outrageous that Counsel provided his personal cell phone number (on the record) to Board and the officers who were present on behalf of the City and informed them that he will personally appear to meet with any of "representative from the City of Miami" whenever they want.  One of the Board members cynically suggested, "why don't you meet with them in Overtown at night when the lights should are off."  Counsel swiftly agreed and asked for a date and time.  The officers suggested March 28, 2017 at 8:30 p.m., the Board included such provision in its Order, and Counsel met with two officers that night.

24.     At the meeting at Bradley's Market on March 28, 2017, the dusk to dawn lights were clearly illuminated.  One of the MPD officers provided Ms. Bradley's counsel with a list of individuals who MPD unilaterally decided were prohibited from entering Ms. Bradley's store, regardless of their intent to lawfully purchase food items.  *See* "Exhibit K."  According to one of the officers, "the developers who plan to invest millions of dollars do not want to fly down from New York and Chicago and see a whole bunch of people standing out here."  Counsel immediately informed the officers that Ms. Bradley will not allow MPD to dictate who can or cannot enter into her store to lawfully purchase food.

25.     Ms. Bradley, via counsel, informed MPD that this overreaching threat to arrest any member of the general public has caused irreparable economic harm to Bradley's Market and will

---

[6] Neither Ms. Bradley nor any of her employees requested the police to remove any of the people arrested for trespassing from her property.

not be tolerated.

26. The threat of irreparable economic harm proved to be more than a notion that same night. A potential customer was about to enter Bradley's Market, but when the customer saw the police officer who counsel was meeting with inside, the customer immediately turned around and walked away from the store. The officer asked the customer, "What's wrong? You don't have anything to be afraid of." The customer responded, "Yes I do if you are in here."

27. On April 1, 2017, the Board issued a formal order memorializing its ruling from the March 22, 2017 hearing and provided Ms. Bradley with a Notice to Appear for a hearing, which is scheduled for Wednesday, April 26, 2017 at 5:00 P.M. *See* "Exhibit H." *See also* "Exhibit L."

## CAUSES OF ACTION

### COUNT I: DEPRIVATION OF CIVIL RIGHTS: FOURTH AMENDMENT VIOLATION OF PRIVACY

28. Ms. Bradley re-alleges the allegations contained in paragraphs 1-27 of this Complaint.

29. This action is brought by Ms. Bradley pursuant to title 42, section 1983, United States Code, for the deprivation of her Civil Rights caused by the City of Miami, through its Nuisance Abatement Board.

30. The Board's order to purchase, install, and provide the MPD with 24-hour access to live-feed remote video monitoring violates Ms. Bradley's Fourth Amendment right to be free from unwarranted government searches.

31. Ms. Bradley has a subjective expectation of privacy against warrantless governmental searches and surveillance at her business.

32. Ms. Bradley's expectation of privacy in her business is objectively reasonable and

7

recognized by society.

33. The Board's order, which grants the MPD 24-hour access to live-feed video surveillance monitoring to Ms. Bradley's property, has never been judicially authorized.

34. The Board's proposed measures are excessively intrusive in light of the circumstances giving rise to the government search.

35. As a result of the Board's unconstitutional orders, Ms. Bradley has spent substantial funds on the purchase and installation of security cameras. Furthermore, the Board has made it clear that it will continue to fine her unless she provides the MPD with 24-hour live feed access to the surveillance cameras on her property.

36. WHEREFORE, Ms. Bradley seeks declaratory and/or injunctive relief from the Board's order which violates her constitutional right to privacy, plus attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just, including economic and non-economic damages.

## COUNT II: VIOLATION OF FIFTH AMENDMENT TAKINGS CLAUSE

37. Ms. Bradley re-alleges the allegations contained in paragraphs 1-27 of this Complaint.

38. This action is brought by Ms. Bradley pursuant to title 42, section 1983, United States Code, for the deprivation of her Civil Rights caused by the City of Miami, through its Nuisance Abatement Board.

39. The Board's order which requires Ms. Bradley to purchase and install security cameras with 24-hour live-feed access to the MPD, and install lights which illuminate the public sidewalk, is a physical invasion of Ms. Bradley's business, and the City has not provided Ms. Bradley with just compensation.

40. Additionally, the MPD's act of unilaterally excluding Ms. Bradley's customers without her permission and arresting them for trespassing is a taking of her property without just compensation. The City's action irreparably harms Ms. Bradley's economic interest in her store by preventing her ability to lawfully sale items to her customers.

41. WHEREFORE, Ms. Bradley moves for an order granting her just compensation for the unlawful taking of her property, including economic and non-economic damages, attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just, including injunctive and/or declaratory relief which prohibits the Board from leveling fines against her and/or her property.

### COUNT III: VIOLATION OF STATE LAW TAKINGS CLAUSE

42. Ms. Bradley re-alleges the allegations contained in paragraphs 1-27 of this Complaint.

43. Although the Board afforded Ms. Bradley procedural due process, the Board's demand for Ms. Bradley to purchase and install security cameras with 24-hour live-feed access to the MPD is a physical invasion of Ms. Bradley's business, in violation of the essential requirements of Florida law under Art. X, § 6 of the Florida Constitution.

44. The Board's demand is not specifically tailored to abate the alleged drug-related nuisance, as it has no competent nor substantial evidence supporting its findings and judgment.

45. As an act of government, the Board's order is a compensable, physical taking of Ms. Bradley's private property within the meaning of Art. X, § 6 of the Florida Constitution because the order does not serve a demonstrated public purpose.

46. WHEREFORE, the Board is liable to provide Ms. Bradley with full compensation for the physical taking of her private property, including economic and non-economic damages,

attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just.

## COUNT IV: INJUNCTIVE RELIEF

47. Ms. Bradley re-alleges the allegations contained in paragraphs 1-27 of this Complaint.

48. In addition to the relief stated above, Plaintiff, Corine Bradley, requests an order of this Court to:

   (a) Issue a Temporary Restraining Order that: (1) prevents any MPD personnel from unilaterally informing Ms. Bradley's customers that they are prohibited from entering Bradley's Market; (2) prohibits the MPD from arresting customers at Bradley's Market for "trespassing," unless Ms. Bradley or a store employee confirms in writing that said customer is not allowed to be inside the premises;

   (b) Restrain the Board from requiring her to provide the MPD with 24-hour access to remote, live-feed video monitoring at Bradley's Market;

   (c) Restrain the Board from exercising jurisdiction over Bradley's Market at the April 26, 2017 nuisance abatement hearing and from accessing additional fines against Ms. Bradley or the property until this Court adjudicates the issues on the merits; and

   (d) Restrain the City from requiring her to pay the excessive fines already entered against her for failing to follow its unconstitutional nuisance abatement directives.

49. Ms. Bradley also respectfully requests for this Court to award her

reasonable attorney's fees and costs pursuant to 42 U.S.C. 1988; and or any other relief that the Court deems proper and just, including economic and non-economic damages.

### COUNT V: APPEAL OF NUISANCE ABATEMENT BOARD'S ORDER

50. Ms. Bradley re-alleges the allegations contained in paragraphs 1-27 of this Complaint.

51. Ms. Bradley requests this Court to exercise supplemental jurisdiction over her state law claim pursuant to 28 U.S.C. § 1367(a) because it arises out of the same operative nucleus of facts.

52. Section 46-7 of the City Code provides that the Board's rulings may be appealed to the appellate division of the circuit court of the 11th judicial circuit.

53. Ms. Bradley specifically requests that this Court exercise supplemental jurisdiction over any appeal regarding the Board's written order dated April 1, 2017.

54. The Board's ruling is erroneous because: (1) Ms. Bradley has no legal authority or duty to "abate" drug sales on a public sidewalk; (2) the Board cannot infringe upon Ms. Bradley's constitutional rights; (3) a public nuisance is defined as "being the *site* of drug sales" – trespassing is not a "nuisance" pursuant to the City Code; and (4) the Board cannot issue multiple fines to a property owner for failing to adhere to each Board issued directive.

55. Ms. Bradley respectfully requests for this Court to award her reasonable attorney's fees and costs pursuant to 42 U.S.C. 1988; and or any other relief that the Court deems proper and just, including economic and non-economic damages.

**DEMAND FOR JURY TRIAL**

Ms. Bradley demands a jury trial of all issues so triable as of right by a jury.

DATED: 20 April 2017.

                                                    Hilton Napoleon, II, Esq., FBN 17593
                                                    RASCO KLOCK  PEREZ NIETO
                                                    2555 Ponce de Leon Blvd., Suite 600
                                                    Coral Gables, Florida 33134
                                                    Telephone: 305.476.7111
                                                    Facsimile: 305.675.7707
                                                    hnapoleon@rascoklock.com

                                                    *Counsel for the Plaintiff, Corine Bradley*


                                            By: /s/ Hilton Napoleon, II
                                                      Hilton Napoleon, II