**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 17-cv-21490-DPG

CORINE BRADLEY,

Plaintiff,

v.

THE CITY OF MIAMI,

Defendant.
_______________________________/

# MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff, CORINE BRADLEY,[1] respectfully requests that this Honorable Court issue a temporary restraining order and/or a preliminary injunction against the Defendant, CITY OF MIAMI, pursuant to Federal Rule of Civil Procedure 65. In support thereof, Ms. Bradley states the following:

## INTRODUCTION

The City of Miami has ordered Ms. Bradley to purchase and install security cameras in her business and ***provide the City of Miami Police Department with 24-hour live-feed video surveillance monitoring of the premises***, which undoubtedly violates her Fourth Amendment right to privacy and the Fifth Amendment Takings Clause. Additionally, the City of Miami has ordered its officers to arrest Ms. Bradley's customers for trespassing and loitering inside her store (and without her permission) simply because her customers do not fit within the City's newfound image of Overtown. The City's overreaching act of mounting equipment on Ms. Bradley's business and

---

[1] Hereafter referred to as "Plaintiff" or "Ms. Bradley."

unilaterally ushering her customers away has caused her irreparable economic harm. Therefore, Ms. Bradley seeks early intervention from this Court, as her injuries cannot be fully redressed after this case is adjudicated on the merits.

**FACT GIVING RISE TO THE CLAIM**

1. Ms. Bradley is the owner of Bradley's Market, located at 1139 NW 2nd Avenue, Miami, FL 33136 in the Overtown neighborhood.

2. Ms. Bradley has owned and maintained her business for over 47 years, and before this incident, she had never received a nuisance or code violation.

3. The entrance to Bradley's Market and its outer walls adjoin NW 2nd Avenue's sidewalk, which is City of Miami property. Unlike other stores and businesses, Bradley's Market does not have a "set-back" from the sidewalk. *See* [D.E. 1-3].

4. On September 6, 2016, the City of Miami filed a complaint against Bradley's Market pursuant to Section 46-3(a) of the City Code and requested that the Nuisance Abatement Board declare the store a public nuisance. *See* [D.E. 1-4]. The City alleged that on at least three occasions between April and June of 2016, the Miami Police Department ("MPD") arrested nine people at Bradley's Market who were involved in narcotics related activities. *See* [D.E. 1-4].

5. Contrary to the City's allegations, none of the drug sales actually took place inside Bradley's Market or on the property. According to police reports,[2] some of the drug sales took place on the public sidewalk of NW 2nd Avenue, which adjoins the property, and at least four occurred on NW 1st or NW 3rd avenue. Ultimately, the State Attorney's Office declined to prosecute most of the people who were arrested. *See* [D.E. 1-5].

6. On September 28, 2016, the Nuisance Abatement Board conducted a hearing

---

[2] Ms. Bradley contests the facts alleged in the reports.

pursuant to Section 46-4 of the City Code. Ms. Bradley argued that none of the drug sales occurred on her property and that she cannot control what happens outside of her property, especially on a public sidewalk. Nevertheless, the Board declared Bradley's Market a drug-related nuisance, in violation of Chapter 893 of the Florida Statutes and City of Miami Ordinance 46-1(2) and (3). *See* [D.E. 1-6].

7. Based on its erroneous finding, the Board ordered Ms. Bradley to take the following steps pursuant to section 46-5(b)(1): (1) take all necessary steps to abate the nuisance; (2) meet with Commander Carr or another representative of the City of Miami Police on a monthly basis; (3) ensure that the property is not in violation of local laws; (4) remove debris from the sidewalk; (5) remove the bamboo from the metal fence in the rear of the property; (6) install adequate lighting; (7) **install security cameras which allow for the Miami Police Department to receive uninterrupted remote-live feed access to the property**; and (8) execute an updated "No Trespassing" affidavit to empower the MPD to remove persons from Bradley's Market without warning. *See* [D.E. 1-6].

8. The City stated that it would exercise jurisdiction over the property for a period of one year and would only take action in the event of a recurrence of the nuisance related activity. *See* [D.E. 1-6].

9. On February 2, 2017, the Board declared Bradley's Market a continuing nuisance and issued Ms. Bradley a $750 fine pursuant to section 46-5(b)(4). The $750 total stemmed from Ms. Bradley's alleged failure to perform each of the following directives: remove the bamboo from the metal fence ($250); install adequate lighting ($250); and install security cameras with uninterrupted remote live-feed access to the MPD ($250). *See* [D.E. 1-7].

10. On February 22, 2017, Ms. Bradley appeared in front of the Board and provided

evidence to show that she has complied with every Board directive listed in paragraph 9 above, except the one requiring her to give MPD 24-hour live feed monitoring to her property.

11. Ms. Bradley did purchase and install surveillance equipment on her property, as directed. However, she made it clear that she would not provide MPD with remote live-feed monitoring access.

12. The Board stated that its 24-hour live-feed monitoring order was lawful because it would help reduce crime in Overtown. The Board also explained that it has ordered live-feed monitoring upon several other property owners in the area.

13. On February 24, 2017, Counsel delivered a letter to the Board's attorney, which expressed his concerns over the legality of its Order and tried to amicably resolve this issue.[3] *See* [D.E. 1-8]. On March 2, 2017, the Board issued a formal Order memorializing its February 22nd ruling which required Ms. Bradley to provide MPD with 24-hour live-feed surveillance to her property. *See* [D.E. 1-9]. The Board also issued Ms. Bradley a notice to appear at a hearing on March 22, 2017.

14. At the March 22, 2017 hearing, Ms. Bradley formally requested the Board to reconsider its March 2, 2017 Order. Counsel provided the Board with United States Supreme Court precedent and other federal cases which clearly show that its requirement to purchase and install 24-hour live-feed remote surveillance monitoring violates the Fourth and Fifth Amendments.[4]

---

[3] Counsel also copied the City Manager and City Attorney.

[4] Counsel cited the following cases, which he had previously emailed to the Board's counsel and the City Attorney's office: *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982); *Shafer v. City of Boulder*, 896 F. Supp. 2d 915 (D. Nev. 2012).

15. Undeterred by logic or Supreme Court precedent, the Board found Bradley's Market to be a continuing nuisance and still ordered Ms. Bradley to provide the MPD with 24-hour live-feed remote video access to her property. The Board also fined her $2,000 for: (1) failing to provide the MPD with uninterrupted remote live-feed access to her security cameras ($500); (2) failing to meet with representatives of the City of Miami Police ($500); (3) failing to take steps to provide the necessary adequate lighting ($500); (4) and failing to avoid having customers ***loiter*** at Bradley's Market ($500). *See* [D.E. 1-10].

16. In addition to the surveillance-monitoring requirement, Ms. Bradley found the Board's order to be rather questionable because:

(a) Ms. Bradley provided the Board with text messages showing that she attempted to contact the Commander who she was supposed to meet with, but the Commander never responded to her messages; *See* [D.E. 1-11].

(b) Ms. Bradley provided the Board with photographs showing that four "dusk to dawn" lights are currently installed on the outside of her property, as the Board had previously requested; and *See* [D.E. 1-12].

(c) MPD admitted that no arrests were made for drug sales, and the City Code does not allow a property to be declared a continuing nuisance because it is the site of "loitering" or "trespassing."

17. Ms. Bradley found it incomprehensible how the Board could issue her a fine for people being arrested for trespassing on her property, when it was the Board who required her to put up the "No Trespassing" signs under the threat of a fine. In essence, the Board punished Ms. Bradley for attempting to comply with its directive.

18. The Board's ruling was so outrageous that Counsel provided his personal cell phone

number (on the record) to the Board and the officers and informed them that he will personally appear to meet with any of "representative from the City of Miami" whenever they want. One of the Board members cynically suggested, "why don't you meet with them in Overtown at night when the lights are shut off." Counsel swiftly agreed and asked for a date and time. The officers suggested March 28, 2017 at 8:30 p.m., the Board included such provision in its Order, and Counsel met with two officers that night.

19. At the meeting at Bradley's Market on March 28, 2017, the dusk to dawn lights were clearly illuminated. One of the MPD officers provided Ms. Bradley with a list of individuals who MPD unilaterally decided were prohibited from entering her store, regardless of their intent to lawfully purchase food items. *See* [D.E. 1-13]. According to one of the officers, "the developers who plan to invest millions of dollars do not want to fly down from New York and Chicago and see a whole bunch of people standing out here." Ms. Bradley, via counsel, immediately informed the officers that Ms. Bradley will not allow MPD to dictate who can or cannot enter into her store to lawfully purchase food.[5]

20. Ms. Bradley, via counsel, informed MPD that its overreaching threat to arrest any member of the general public has caused irreparable economic harm to Bradley's Market and will not be tolerated.

21. The threat of irreparable economic harm proved to be more than a notion that same night. A potential customer was about to enter Bradley's Market, but when the customer saw the police, the customer immediately turned around and walked away from the store. The officer asked the customer, "What's wrong? You don't have anything to be afraid of." The customer responded, "Yes I do if you are in here."

[5] The "No Trespassing" sign giving the police the authority to remove people from property had already been taken down.

22. On April 1, 2017, the Board issued a formal order memorializing its ruling from the March 22, 2017 hearing and provided Ms. Bradley with a Notice to Appear for a hearing on April 26, 2017. *See* [D.E. 1-14].

23. At the April 26, 2017 hearing, Commander Carr of MPD testified that no drug sales occurred at Bradley's Market since the last hearing.

24. Commander Carr did testify, however, that the MPD had to use police resources to "usher" people out of Ms. Bradley's market for "loitering." Command Carr did not know the names of the people who were "loitering," nor did she know if they were on MPD's list of "known drug offenders."

25. Ms. Bradley vehemently objected to the notion that MPD could unilaterally remove customers from her store without her permission.

26. The Board found no problem with MPD's actions and issued Ms. Bradley a $500.00 fine for people "loitering" on her property and $500.00 for refusing to give the MPD access to her surveillance cameras.

**MEMORANDUM OF LAW**

To obtain a preliminary injunction, a plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of relief would serve the public interest. *Schiavo ex rel. Schindler v. Shiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Great American Insurance Company v. Foundation Engineering, Inc.*, 2015 WL 6395283 (S.D. Fla. 2015). A district court must balance the strength of a plaintiff's arguments in each of the four elements when deciding whether to grant a preliminary injunction. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C.

Cir.1995). "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Mills v. District of Columbia*, 571 F.3d 1304, 387 U.S. App. D.C. 221 (D.D.C. 2009)(granting an injunction where fourth amendment constitutional rights were violated).

Additionally, it has long been established that the loss of constitutional freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971); *see also Doe v. LaDue*, 514 F.Supp.2d 1131 (D. Minn. 2007)(holding that the violation of plaintiff's fourth amendment rights in the past and threat of future harm weighs in favor of injunctive relief for plaintiffs).

***i. There is a substantial likelihood that Ms. Bradley will succeed on the merits***

The Board's order to purchase, install, and provide the MPD with 24-hour access to live-feed remote video monitoring clearly violates Ms. Bradley's Fourth Amendment right to be free from unwarranted government searches. *See Shafer v. City of Boulder*, 896 F. Supp. 2d 915 (D. Nev. 2012)(holding that video surveillance is a 'search' and is presumptively unreasonable without a warrant). Ms. Bradley has a subjective expectation of privacy against warrantless governmental surveillance at her business, which is objectively reasonable and recognized by society. *See Jones v. Houston Community College System*, 816 F.Supp.2d 418 (S.D. Tex. 2011)(employees secretly videotaped in room had a reasonable expectation of privacy); *Carter v. County of Los Angeles*, 770 F.Supp.2d 1042 (C.D. Cal. 2011)(department's secret video surveillance of employees violated Fourth Amendment).

In *Shafer*, a property owner brought a civil rights action against the City of Boulder for conducting video surveillance of his home. *Shafer*, 896 F. Supp. 2d at 926. The police setup

high-tech surveillance equipment at a neighbor's home and recorded the plaintiff's property for 56 days without a warrant. *Id*. at 924, 925. The District Court held that a 56-day around-the-clock video surveillance of the plaintiff's backyard on behalf of the police department violated the Fourth Amendment. *Id*. at 928.

Here, the City of Miami's order is much more egregious than *Shafer* because it forces Ms. Bradley to purchase and install security cameras **on her own property** and provide the City of Miami Police Department with 24-hour live-feed video access **to her own property**. The City's order undoubtedly violates Ms. Bradley's Fourth Amendment right against unreasonable searches and her right to privacy. Ms. Bradley will likely succeed on the merits.

Additionally, the Board's order to purchase, install, and provide the MPD with 24-hour live-feed remote video monitoring violates the Takings Clause of the Fifth Amendment. The United States Supreme Court has made it clear that any physical occupation of a citizen's property without just compensation constitutes a "taking," notwithstanding a state statute which seemingly authorizes such conduct. *See Loretto v. Teleprompter Manhattan CATV Corp*., 458 U.S. 419 (1982). In *Loretto*, a New York statute allowed cable companies to install its wires on private property. *Id*. at 423. Pursuant to the statute, a one-time $1 payment was a reasonable fee. *Id*. A property owner brought a class action lawsuit for damages and injunctive relief alleging that installation of the cables constituted a taking without just compensation. *Id*. at 424. The Supreme Court agreed and stated that, notwithstanding the minimal size of the physical invasion, the Takings Clause is applicable whenever the government authorizes a physical invasion onto private property without just compensation. *Id*. at 427.

Here, the Board's order which requires Ms. Bradley to purchase and install security cameras (and give MPD access) and install lights which illuminate the public sidewalk, is a

physical invasion of Ms. Bradley's business. The Board claims that its order will help abate drug sales from occurring on the public sidewalk in Overtown. However, the City has not provided Ms. Bradley with any compensation, and therefore, the Board's order violates the Takings Clause. Ms. Bradley will likely succeed on the merits.

Finally, MPD's unilateral exclusion of Ms. Bradley's customers without her permission, which includes arresting them for trespassing and loitering, is also taking of her property without just compensation. A taking occurs whenever a public entity substantially deprives a private party of beneficial use of his property. *See Fountain v. Metropolitan Atlanta Rapid Transit Authority*, 678 F.2d 1038 (11th. Cir. 1982). "If official authorities act on behalf of the state so as to take private property for public use without just compensation, even if they are acting outside of the scope of their official powers, they have violated the fifth and fourteenth amendments." Id. at 1043.

Here, the City of Miami deprives Ms. Bradley of her beneficial use of her property whenever MPD officers "usher" customers out of her convenience store. The City's official reason for its action is to abate drug sales in Overtown. The unofficial reason is perhaps more sinister, but equally conceivable, *i.e.* so "the developers who are spending millions of dollars don't see people hanging out in Overtown." Either way, the City's action of removing Ms. Bradley's customers from her store constitutes a taking without just compensation, and Ms. Bradley will likely succeed on the merits.

***ii. Ms. Bradley will suffer irreparable injury if the relief is not granted.***

It has long been established that the loss of constitutional freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion) (citing *New York Times Co. v. United States,* 403 U.S. 713 (1971); *see*

*also Doe v. LaDue*, 514 F.Supp.2d 1131 (D. Minn. 2007)(holding that the violation of plaintiff's fourth amendment rights in the past and threat of future harm weighs in favor of injunctive relief for plaintiffs).

As stated above, MPD has a standing order to remove customers from Ms. Bradley's property in violation of the Takings Clause, and to force Ms. Bradley to provide MPD with video surveillance access to her property. Since the City's order violates Ms. Bradley's constitutional rights, this Court must assume that she will be irreparably injured.

Additionally, Ms. Bradley will suffer irreparable economic harm if the MPD continues to remove Ms. Bradley's customers from her store. If such actions continue, Ms. Bradley will not have any more customers. The threat of irreparable economic harm is more than a notion because potential customers have already avoided her store due to MPD's conduct. Ms. Bradley may never regain those customers again.

**iii. *The threatened injury to Ms. Bradley outweighs the harm the relief would inflict on the City*.**

There is virtually no harm to the City if this Court issues a restraining order or preliminary injunction. Ms. Bradley, on the other hand, is continuously losing customers and profit at her business. Additionally, the City of Miami continues to issue Ms. Bradley thousands of dollars in fines each month simply because she is unwilling concede her clearly established constitutional rights. As such, the threat of injury to Ms. Bradley substantially outweighs any harm to the City.

***iv. The entry of relief would serve the public interest.***

A restraining order and preliminary injunction would provide the people of Overtown relief from the overreaching hand of government. It is inconceivable how private citizens are being arrested and told that they cannot patronize a store which has been a pillar of the community for over 47 years. The City of Miami must be reminded that the Constitution was enacted to protect

citizens from government, not the other way around.

**REQUEST FOR RELIEF**

Accordingly, Plaintiff, Corine Bradley, requests this Court to enter a temporary restraining order or preliminary injunction which:

(a) prohibits any MPD personnel from unilaterally informing Ms. Bradley's customers that they are barred from entering or remaining in Bradley's Market, and prohibits the MPD from arresting customers at Bradley's Market for "trespassing" or "loitering" unless Ms. Bradley or a store employee confirms in writing that said customer is not allowed to be inside the premises;

(b) prohibits the Board from requiring her to provide the MPD with 24-hour remote, live-feed video monitoring access at Bradley's Market;

(c) prohibits the City of Miami from exercising jurisdiction over Ms. Bradley or Bradley's Market at any nuisance abatement hearing, and from accessing any additional fines against Ms. Bradley or her property until this Court adjudicates this issue on the merits; and

(d) prohibit the City of Miami from collecting any of the fines already entered against Ms. Bradley or her property for failing to follow the Board's unconstitutional nuisance abatement directives.

Ms. Bradley also respectfully requests that this Court award her reasonable attorney's fees and costs pursuant to 42 U.S.C. 1988; and any other relief that the Court deems proper and just.

**Dated:** May 3, 2017

Hilton Napoleon, II, Esq., FBN 17593
RASCO KLOCK PEREZ NIETO
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7100
Facsimile: 305.675.0850
hnapoleon@rascoklock.com

*Counsel for the Plaintiff, Corine Bradley*

By: /s/ Hilton Napoleon, II
Hilton Napoleon, II

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 3, 2017, that a true and correct copy of the foregoing Motion was served electronically via the Court's CM/ECF system upon the parties who are currently on the list to receive e-mail notice/service for this case and on the parties identified in the service list below.

By: *<u>/s/ Hilton Napoleon, II</u>*
Hilton Napoleon, II

Henry Hunnefeld, Esq.
City of Miami
Assistant City Attorney
hjhunnefeld@miami.gov

Rachel Dooley, Esq.
City of Miami
Assistant City Attorney
rsdooley@miami.gov