**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 17-cv-21490-GAYLES/OTAZO-REYES

CORINE BRADLEY,

Plaintiff,

v.

THE CITY OF MIAMI,

Defendant.
________________________________/

**REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION[1]**

Plaintiff, CORINE BRADLEY,[2] files this Reply to the Defendant's, CITY OF MIAMI, Response in Opposition of Motion for Temporary Restraining Order and Preliminary Injunction. In support thereof, Ms. Bradley states the following:

**PROCEDURAL HISTORY**

On April 20, 2017, Ms. Bradley filed a five-count Complaint alleging: (Count I) Violation of her Fourth Amendment privacy rights; (Count II) Violation of the Fifth Amendment Takings Clause; (Count III) Violation of Florida's Takings Clause; (Count IV) Injunctive Relief; and (Count V) Appeal of the Nuisance Abatement Board's Order. *See* [D.E. 1]. On May 3, 2017, Ms. Bradley filed a *Motion for Temporary Restraining Order and Preliminary Injunction* ("Motion for TRO). *See* [D.E. 6]. That same day, United States District Judge Darrin Gayles referred the Motion for TRO to United States Magistrate Judge Alicia Otazo-Reyes for report and

---

[1] The Defendant also filed a Motion to Dismiss Complaint, which will be address in a separate document.

[2] Hereafter referred to as "Plaintiff" or "Ms. Bradley."

recommendation. Judge Otazo-Reyes set an evidentiary hearing for May 8, 2017 at 4:00 p.m.

On May 8, 2017 at 9:40 a.m., the City of Miami filed a 17-page document entitled *Motion to Dismiss Complaint and Response in Opposition to Motion for Temporary Restraining Order*. *See* [D.E. 9]. At 10:40 a.m., Judge Otazo-Reyes filed a paperless order indicated that she would address the arguments made in the City's motion at the 4:00 hearing.

At the hearing, Judge Otazo-Reyes acknowledged that Judge Gayles had only referred the Motion for TRO to her for report and recommendation, and not the motion to dismiss. However, Judge Otazo-Reyes indicated that it would be prudent to address whether the Complaint was "ripe" for adjudication and whether the Court has jurisdiction to determine the issues set forth in the Complaint (which was part of the City's argument for dismissal). Since the City filed its motion on the morning of the hearing, Judge Otazo-Reyes gave Ms. Bradley until May 10, 2017 to address her concerns regarding "ripeness" and jurisdiction. This expedited *Reply* solely addresses the ripeness and jurisdictional questions. Ms. Bradley respectfully requests leave to file a response to the portions of the City's motion which address the substantive issues regarding dismissal.

## MEMORANDUM OF LAW

### I. Ripeness.

It is important to note that Ms. Bradley's Complaint raises two separate and distinct constitutional violations: a Fourth Amendment violation of her right to privacy (Count I), and a Fifth Amendment violation of the "takings" clause (Count II). Regarding the Fourth Amendment privacy violation, Ms. Bradley alleged that the City of Miami's order to purchase, install, and provide the Miami Police Department with 24-hour access, live-feed monitoring violates her right to be free from unwarranted government searches. Ms. Bradley specifically alleged that she has spent substantial funds to purchase and install security cameras, and is

seeking economic and non-economic damages. See [D.E. 1 at pp. 30-36]. The City failed to assert (nor could it) that Ms. Bradley's Fourth Amendment claim is "unripe" for a jury to determine her monetary damages from installing a high-tech security system, pursuant to the City's order. At a minimum, Count I is ripe for determination.

In reality, the City's "ripeness" argument is limited to Count II of the Complaint, *i.e*. a violation of the "takings" clause. The City asserts that Ms. Bradley's Complaint should be dismissed for failing to exhaust her state law remedies because "a reverse [sic] condemnation remedy is available for takings violations since at least 1990, well before the alleged taking in this case." *See* [D.E. 9 at pg. 5].

The City's argument is seriously flawed because Florida's inverse condemnation law fails to provide Ms. Bradley with a remedy for the "taking" that occurred in this case, *i.e*. installing surveillance equipment and removing customers from her store. Under Florida law, a property owner can only succeed in an inverse condemnation proceeding if "the government's action constitutes a substantial interference with her private property rights …, resulting in a substantial deprivation of the beneficial use of her property." *Drake v. Walton Cty*., 6 So. 3d 717, 720 (Fla. 1st DCA 2009); *Diamond K Corp. v. Leon County*, 677 So.2d 90 (Fla. 1st DCA 1996) (holding that no taking occurred as a result of flooding of a creek in the appellant's property because the appellant had not shown that a continuing physical invasion occurred, depriving it of all reasonable use of its property); *Hansen v. City of Deland*, 32 So. 3d 654 (Fla. 5th DCA 2010)(landowners who filed inverse condemnation action failed to establish that a compensable taking had occurred because they failed to prove that they were temporarily denied any reasonable use of their properties, even though one third of a parcel was under water).

Here, Ms. Bradley does not contend that the City's requirement to append a camera on

her business and give the MPD 24-hour remote live-feed access will deny her of all reasonable use of her property. Nor does she contend that MPD's habit of unlawfully ushering some of her customers out of her store will deny her all reasonable use of the property since she can still serve other customers. The City's order only deprives Ms. Bradley of some of the use of her property, and therefore, Florida's inverse condemnation law does not provide her with a procedure to obtain just compensation.[3] (Nevertheless, as argued in the Complaint, Ms. Bradley is still entitled to just compensation for the City's taking pursuant to *Loretto v. Teleprompter Manhattan CATV Corp*., 458 U.S. 419 (1982)).[4]

## II. The *Younger* Abstention Doctrine.

The Supreme Court created a three-part test to determine whether federal courts should abstain from exercising jurisdiction over civil and administrative proceedings that are pending in state court: (1) if state proceedings are ongoing; (2) if the state proceedings implicate important state interest; and (3) if the party could pursue a federal claim in the state court proceeding. See *Younger v. Harris*, 401 U.S. 37 (1971). "The pertinent issue is whether appellees' constitutional claims could have been raised in the pending state proceedings." *Trainor v. Hernandez*, 431 U.S. 434, 447 (1977).

The Supreme Court address this issue in *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 427–32 (1982). In *Middlesex*, Hinds, a member of the New Jersey Bar, was brought up on ethic charges because of his open criticism of a trial judge's judicial

---

[3] Additionally, Ms. Bradley's appeal of the administrative fines to the Circuit Court of Miami-Dade County does not provide her with a procedure to obtain just compensation from the City.

[4] Just as in *Loretto*, the City's actions constitutes a taking of Ms. Bradley's property. However, unlike Loretto, the City's action is based upon a unilateral decision by its Nuisance Abatement Board, which has final policymaking authority for the City of Miami, and not a state statute or City Ordinance. Accordingly, there is no important state law that Florida courts need to examine before this Court adjudicates the issues raised in the Complaint.

temperament and racial insensitivity. *Id*. at 428. Instead of filing an answer to the ethics charges in accordance with the New Jersey Bar disciplinary procedures, Hinds filed suit in federal court contending that the disciplinary rules violated his First Amendment rights. *Id.* at 429. In addition, Hinds asserted that the disciplinary rules were facially vague and overbroad. *Id*. The District Court granted the ethics commission's motion to dismiss based on *Younger v. Harris*, 401 U.S. 37 (1971), concluding that "[t]he principles of comity and federalism dictate that the federal court abstain so that the state is afforded the opportunity to interpret its rules in the face of a constitutional challenge." *Id*.

A divided panel of the United States Court of Appeals for the Third Circuit reversed, stating that the disciplinary proceedings did not provide a meaningful opportunity for Hinds to adjudicate his constitutional claims. *Id.* at 430. On petition for rehearing, the ethics commission attached an affidavit from the Clerk of the New Jersey Supreme Court which stated that the New Jersey Supreme Court would directly consider Hinds' constitutional challenges and that the court would consider whether such a procedure should be made explicit in the Supreme Court rules. *Id*. The Third Circuit declined to alter its original decision, stating that the relevant facts concerning abstention are those that existed at the time of the District Court's decision. 651 F.2d 154 (1981). The Supreme Court reversed, holding that the New Jersey Supreme Court adopted a procedure that allowed for an aggrieved party in a disciplinary hearing to seek interlocutory review of a constitutional challenge to the proceedings, and therefore, the petitioner had an adequate opportunity to pursue his federal law claim. *Id*. at 431.

Here, unlike the plaintiff in *Middlesex*, Ms. Bradley is not seeking to declare a state statute or city ordinance unconstitutional. Furthermore, Ms. Bradley, unlike the plaintiff in *Middlesex*, is seeking monetary damages against the City for requiring her to install security

cameras and ushering her customers away, which is a remedy that she was not allowed to seek in the "state court proceedings." It is undisputed that Chapter 46 of the City of Miami Code of Ordinances provides absolutely no provision for Ms. Bradley to seek monetary damages against the City under 1983 for its unlawful orders. *See* City of Miami Code of Ordinances, Chapter 46. Similarly, there are no provisions within the Florida Statutes or Rules of Appellate Procedure which allow Ms. Bradley to seek monetary compensation from the City because of the Nuisance Abatement Board's ruling. *See generally*, Fla. Stat. 162.11, Fla. R. App. Pro. 9.100(c)(2).

It is well-settled in Florida that a party seeking review from an administrative action is limited to whether procedural due process was accorded, whether the essential requirements of the law were observed, or whether the administrative findings and judgment were supported by competent substantial evidence. *Metropolitan Dade County v. Blumenthal*, 675 So. 2d 598 (Fla. 3d DCA 1995); *Dusseau v. Metropolitan Dade County Board of County Commissioners,* 794 So. 2d 1270 (Fla. 2001). Such an appeal shall not be a hearing de novo but shall be limited to appellate review of the record created before the nuisance abatement board. *See City of Miami Code of Ordinance 46-7.* Since Ms. Bradley never had an opportunity to put forth a 1983 damages claim before the Nuisance Abatement Board, then it logically follows that she cannot put for such claim during the state court appellate proceeding. Ms. Bradley's "state law proceeding" is limited to the $2,000 fine she received for failing to adhere to the Nuisance Abatement Board's directives. Ms. Bradley appealed the $2,000 fine to a Florida appellate court pursuant to state law. Contrary to the City's claim, the "state court proceedings" do not provide Ms. Bradley with an adequate forum or remedy to pursue her 1983 claims. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602, (1975)("The pendency of the state-court action called for

restraint by the federal court and for the dismissal of appellees' complaint unless … their state remedies were inadequate to litigate their federal due process claim.”).

The fact that Ms. Bradley could have technically filed her civil rights lawsuit in state court is unpersuasive. When federal claims are premised on 1983, courts must recognize the paramount role Congress has assigned to the federal courts to protect constitutional rights. *See Steffel v. Thompson*, 415 U.S. 452, 472–473 (1974); *Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496 (1982)(holding that exhaustion of state administrative remedies was not a prerequisite to an action under the Civil Rights Act of 1871). There was no requirement whatsoever for Ms. Bradley to file her 1983 action for damages in state court. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997).

In fact, the Supreme Court ruled that federal courts can exercise jurisdiction over cases involving administrative actions which violates federal law, but which also seek on-the-record review of administrative findings. See *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997). According to the Supreme Court, “nothing in § 1367(a) suggests that district courts are without supplemental jurisdiction over claims seeking precisely the same brand of review of local administrative determinations.” Cf. *Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982) (interpreting Individuals with Disabilities Education Act, 20 U.S.C. § 1415(e), which contemplates deferential review of state administrative action). “As articulated by *Gibbs*, the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.” 522 U.S. at 172. Accordingly, “district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the

pendent jurisdiction doctrine." 522 U.S. 173.

Accordingly, this Court has jurisdiction to adjudicate this case and it is ripe for review. Furthermore, the Court can exercise supplemental jurisdiction over the state-law claims and appeal. For the reasons set forth above, Ms. Bradley respectfully request that this Honorable Court grant her the relief requested in her Motion for TRO.

**Dated:** May 10, 2017

Hilton Napoleon, II, Esq., FBN 17593
RASCO KLOCK PEREZ NIETO
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7100
Facsimile: 305.675.0850
hnapoleon@rascoklock.com

*Counsel for the Plaintiff, Corine Bradley*

By: /s/ Hilton Napoleon, II
Hilton Napoleon, II

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 10, 2017, that a true and correct copy of the foregoing Motion was served electronically via the Court's CM/ECF system upon the parties who are currently on the list to receive e-mail notice/service for this case and on the parties identified in the service list below.

By: *[/s/ Hilton Napoleon, II]*
Hilton Napoleon, II

Henry Hunnefeld, Esq.
City of Miami
Assistant City Attorney
hjhunnefeld@miami.gov

Rachel Dooley, Esq.
City of Miami
Assistant City Attorney
rsdooley@miami.gov