UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-21490-CIV-GAYLES/TURNOFF

**CORINE BRADLEY,**

      **Plaintiff,**

v.

**THE CITY OF MIAMI,**

      **Defendant.**

                /

## ORDER

**THIS CAUSE** comes before the Court on Plaintiff Corine Bradley's Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 6] and Defendant City of Miami's Motion to Dismiss Complaint [ECF No. 9]. The Court referred Plaintiff's Motion to Magistrate Judge Alicia M. Otazo-Reyes pursuant to 28 U.S.C. § 636(b)(1)(B) and Administrative Order 2003-19 of this Court for a Report and Recommendation [ECF No. 15]. On May 30, 2017, Judge Otazo-Reyes issued her Report recommending that the Court deny Plaintiff's motion (the "Report") [ECF No. 15]. On June 13, 2017, Plaintiff filed timely objections to the Report [ECF No. 18]. On June 27, 2017, Defendant City of Miami responded to Plaintiff's objections [ECF No. 20].

### BACKGROUND

Plaintiff Corine Bradley ("Plaintiff") is the owner of Bradley's Market in the Overtown neighborhood in the City of Miami. Plaintiff has owned Bradley's Market[1] for over forty years.

---

[1]  Plaintiff's business is registered under the fictitious name "Bradley's Grocery" with the Florida Division of Corporations.

On September 6, 2016, Defendant, the City of Miami (the "City"), filed a complaint against Bradley's Market requesting that the Nuisance Abatement Board of the City of Miami (the "Board") declare the store a public nuisance. The City based its request on multiple narcotics-related arrests made at or near Plaintiff's property – including the public sidewalk that adjoins the property.[2] Following an evidentiary hearing, the Board declared Bradley's Market a nuisance and ordered Plaintiff to take many actions including: (1) requiring Plaintiff to install security cameras on the south side (Northwest 2nd Avenue) of the property which allowed the City of Miami Police Department ("MDP") uninterrupted remote live feed access to the property and (2) requiring Plaintiff to execute an updated "no trespassing" affidavit to empower MDP or other law enforcement to remove people from the property after warning. Plaintiff purchased and installed the surveillance equipment on her property, but did not give MPD remote live-feed monitoring access. The Board later issued two orders fining Plaintiff for failing to comply with its requests, including her continued refusal to provide MDP with live feed access and for failing to avoid having customers loiter "at" the store.[3] On May 1, 2017, Plaintiff filed a Petition for Writ of Certiorari in the Appellate Division of the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, asking the state court to reverse the Board's order declaring her property a public nuisance and requiring her to install surveillance cameras. In her Petition, Plaintiff argued that the Board's decision did not comply with the essential requirements of the law and that the Board's decision was not supported by competent and substantial evidence.

On April 20, 2017, before appealing in the state court, Plaintiff filed a Complaint in this Court against the City alleging multiple claims, including one under the Fourth Amendment for

---

[2] Plaintiff disputes that any drug sales occurred in her property.
[3] It is unclear whether "at" means in the store, outside of the store, or both.

invasion of privacy and another under the Fifth Amendment's takings clause.[4]  On May 3, 2017, Plaintiff filed her Motion for Temporary Restraining Order and Preliminary Injunction, asking the Court to (1) prohibit MPD from informing customers that they are barred from entering the market and from arresting customers for trespassing or loitering unless Plaintiff or one of her employees confirms in writing that the said customer is not allowed inside the premises; (2) prohibit the Board from requiring Plaintiff to provide the MPD with 24-hour remote, live-feed video monitoring access; (3) prohibit the City from exercising jurisdiction over Ms. Bradley or Bradley's Market at any nuisance abatement hearing and from assessing additional fines pending a resolution on the merits of this action; and (4) prohibit the city from collecting any fines pending adjudication.  The Court referred the motion to Magistrate Judge Otazo-Reyes for a report and recommendation.

On May 8, 2017, Magistrate Judge Otazo-Reyes held an evidentiary hearing on Plaintiff's Motion.  At the hearing, the City represented that it did not seek to monitor the interior of Plaintiff's property or the rear of the property.  The City also acknowledged that the Board's prior order was poorly phrased and that the City was no longer seeking to require Plaintiff to prevent customers from loitering and prowling.

On May 30, 2017, Magistrate Judge Otazo-Reyes issued her Report recommending that the Court deny the request for a preliminary injunction finding that Plaintiff failed to demonstrate a likelihood of success on the merits on both her Fourth and Fifth Amendment claims.  Plaintiff has timely objected.[5]

---

[4]   Plaintiff also alleged claims for a taking under Florida state law (Count III), injunctive relief (Count IV), and an appeal of the Board's decision (Count V).  Plaintiff has since conceded that her takings claim under Florida law must be dismissed.

[5]   A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Those portions of the report and recommendation to which objection is made are accorded *de novo* review, if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d

## DISCUSSION

### I.     Preliminary Injunction

Plaintiff asks the Court to enjoin the Board from enforcing its order pending resolution of her claims.

### A.     Legal Standard

"A preliminary injunction may be granted to a moving party who establishes '(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.'" *United States v. Alabama*, 691 F.3d 1269, 1281 (11th Cir. 2012) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). "A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015) (quoting *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001) (per curiam)).

### B.     Likelihood of Success on the Merits

#### 1.     Fourth Amendment Claim

Based on its *de novo* review of Plaintiff's Motion and the record, the Court agrees with Judge Otazo-Reyes's analysis and findings regarding Plaintiff's Fourth Amendment claim. Plaintiff has no legitimate expectation of privacy for the sidewalk abutting the property. In addition, the City Attorney's representations that the Board did not require Plaintiff to monitor

---

1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). Any portions of the report and recommendation to which *no* specific objection is made are reviewed only for clear error. *Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001); *accord Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).

the interior of the property and that the requirement to monitor the rear of the property was no longer in place effectively negates any additional Fourth Amendment concerns. Although Plaintiff expressed concern that the City will "start up again," the City is bound by the representations made in these proceedings and could be subject to sanctions for acting in a manner inconsistent with those representations. Accordingly, the Court finds that Plaintiff fails to establish a likelihood of success on the merits of her Fourth Amendment claim.

### 2. Fifth Amendment Claim

"The chief and one of the most valuable characteristics of the bundle of rights commonly called property is the right to sole and exclusive possession–the right to *exclude* strangers, or for that matter friends, but especially the Government." *Love v. Terminal Partners v. U.S.*, 97 Fed.Cl. 355, 371 (Fed. Cl. 2001) (internal quotations and citations omitted). The Takings Clause of the Fifth Amendment to the U.S. Constitution, incorporated against the States by the Fourteenth Amendment's Due Process Clause, was designed to protect this bundle of rights and provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. It is important to note that the Constitution does not prevent the government from ever taking private property. Rather, it prohibits the government from taking property without just compensation. *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 194-95 (1985).

The Takings Clause, as interpreted by the Supreme Court, is implicated in two distinct scenarios. The first is when the government physically takes or occupies the property and the second is when the government regulates the property in a manner that "deprives the owner of the economic use of the property." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 522-23 (1992). "A physical taking occurs when 'government encroaches upon or occupies private

5

land for its own use.'" *Love*, 97 Fed.Cl. at 373 (quoting *Palazzolo v. Rhode Island,* 533 U.S. 606, 617 (2001)).  A regulatory taking occurs when "the government prevents the landowner from making a particular use of the property that otherwise would be permissible." *Id.* (quoting *Forest Props., Inc. v. United States*, 177 F.3d 1360, 1364 (Fed.Cir. 1999)).  Courts are more likely to find a taking when the government has physically occupied the property as opposed to when the government regulates the property in a manner that interferes with the owners use of the property.  *Loretto v. Telepromter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982) ("A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.") (citations omitted).  Indeed, the Supreme Court has "long considered a physical intrusion by government to be a property restriction of an unusually serious character for purposes of the Takings Clause." *Id.* at 428.

> a. **The Surveillance Camera**
>
> 1. **Physical Taking**

The Board's requirement here that Plaintiff pay for and permanently affix a camera to her private property is a physical taking under the Fifth Amendment.  The Court finds this case indistinguishable from *Loretto*, where the Supreme Court found that cable installation in an apartment building, authorized by the State of New York, was a physical occupation of private property despite the cable only occupying a small portion of the property.  "[P]ermanent occupations of land by such installations as telegraph and telephone lines, rails, and underground pipes or wires are takings even if they occupy only relatively insubstantial amounts of space and do not seriously interfere with the landowner's use of the rest of his land." *Loretto*, 458

U.S. at 430. Requiring Plaintiff to permanently affix a camera and its attendant lines to her building is no different than requiring landlords in New York to permit a cable company to run cable lines on their property.

The Report found that requiring Plaintiff to install cameras on her property is not a taking because she still has a reasonable use of the property, citing the Florida First District Court of Appeal's decision in *Glisson v. Alachua Cty.,* 558 So. 2d 1030, 1035 (Fla. 1st DCA 1990). The Report and the City conflate the analysis for physical and regulatory takings. *Glisson* involved a land use regulation that limited development of certain private properties. The Florida appellate court held that, for a regulation to be a taking, the property owner must demonstrate that the regulation is unreasonable or arbitrary or that it denies a substantial portion of the beneficial use of the property. *Id.* at 1035. However, as stated above, this case involves a physical taking and, therefore, the analysis is different. Unlike regulatory takings, which require the Court to analyze the extent to which the regulation limits economically beneficial uses of the property, physical occupations by the government are per se takings. *See Loretto,* 458 U.S. at 434-35 ("when the character of the governmental action is a permanent physical occupation of property, our cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner.") (internal quotation and citations omitted); *Love*, 97 Fed.Cl. at 374 ("A permanent physical occupation is a per se physical taking . . . because it destroys, among other rights, a property owner's right to exclude.") (internal citations and quotations omitted); *Qwest Corp. v. U.S.*, 48 Fed.Cl. 672, 688 (Fed.Cl. 2001) ("In other words, a permanent physical occupation of property is a *per se* taking"). As a result, once the government has permanently and physically occupied private property, the Cout must only determine the

amount of compensation due. *Loretto*, 458 U.S. at 437. By requiring that Plaintiff affix a camera on her property for the City's use, the City has permanently and physically occupied a portion of Plaintiff's property. Accordingly, there is a per se taking.

### 2. Ripeness

The Report also found that even if this case involved a taking, Plaintiff's Fifth Amendment Claim was not ripe for review, citing the Eleventh Circuit's decision in *Eide v. Sarasota Cty*, 908 F.2d 716, 720-21 (11th Cir. 1990). The Court in *Eide,* relying on the Supreme Court's decision in *Williamson,* held that a just compensation takings claim is not ripe for review until (1) there has been a final decision and (2) the plaintiff has utilized all state procedures for just compensation. *Id.* The final decision requirement is assumed in a physical takings action because "'[w]here there has been a physical invasion, the taking occurs at once, and nothing the [governmental actor] can do or say after that point will change that fact.'" *Pascoag Reservoir & Dam, LLC v. Rhode Island*, 337 F.3d 87, 91–92 (1st Cir. 2003) (quoting *Hall v. City of Santa Barbara,* 833 F.2d 1270, 1281 n. 28 (9th Cir.1987) *overruled on other grounds* by *Yee*, 503 U.S. at 519).

With respect to the second prong in the ripeness analysis, a plaintiff in a physical takings action is generally required to seek just compensation in state court before bringing a federal claim. "'[P]otential federal court plaintiffs' are required to 'pursue any available state court remedies that might lead to just compensation before bringing suit in federal court under section 1983 for claims arising under the Fourteenth and Fifth Amendments for the taking of property without just compensation.'" *Hadar v. Broward County*, No. 15-cv-61845, 2016 WL 4503343 at * 3 (S.D. Fla. June 16, 2016) (quoting *Fields v. Sarasota Manatee Airport Auth*, 953 F.2d 1299, 1303 (11th Cir. 1992).

Under Florida law, the procedure for just compensation, where the government has taken private property without formally exercising the power of eminent domain, is an inverse condemnation proceeding. *See Pembroke Center, LLC v. State Department of Transportation*, 64 So. 3d 737, 740 (Fla. 4th DCA 2011). To set forth a claim for inverse condemnation, a property owner must establish either "(1) a continuing physical invasion of the property or (2) a substantial ouster and deprivation of all beneficial use of the property." *Bakus v. Broward County*, 634 So. 2d 641, 642 (Fla 4th DCA 1993) (internal citations omitted). *See also Pembroke Center*, 64 So. 3d at 740 ("A taking occurs when a property owner suffers a physical appropriation of his property or when a regulation 'denies all economically beneficial or productive use of land.'") (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992)). There are two limited exceptions to the requirement that a plaintiff utilize all state remedies before filing a federal takings claim: (1) the state remedies are inadequate or unavailable or (2) the state remedies are futile. *See Franco v. District of Columbia*, 456 F. Supp. 2d 35, 42 (D.C. 2006).

It is uncontested that Plaintiff has not pursued an inverse condemnation proceeding in Florida. Plaintiff contends that inverse condemnation remedies are unavailable to her because she will not be able to establish deprivation of all use of her property.[6] The bulk of the reported Florida inverse condemnation cases relate to regulatory takings where the plaintiff was required to show "a substantial deprivation of all beneficial use" of the property to obtain just compensation. *See e.g. Hansen v. City of Deland*, 32 So. 3d 654, 656 (Fla. 5th DCA 2010) *See also Tampa-Hillsborough Cnty. Exp'y Auth. v. A.G.W.S. Corp.*, 640 So. 2d 54, 58 (Fla. 1994); *City of Key West v. Berg*, 655 So. 2d 196, 196 (Fla. 3d DCA 1995) (per curiam) (explaining that a plaintiff, as a "prerequisite showing" to establish a regulatory taking claim, must establish that the

---

[6] The Report found that because Plaintiff could not establish that the City deprived her of a substantial use of her property, no taking occurred. As detailed above, physical takings do not require a substantial deprivation of the property.

regulation has deprived her of all or substantially all economically beneficial use of the property), *superseded by rule on other grounds as stated in Osceola County v. Best Diversified, Inc.*, 830 So. 2d 139 (Fla. 5th DCA 2002). However, the City's actions constitute a physical taking. The language cited in *Bakus* and *Pembroke Center* suggests that for a physical taking, such as the one at issue here, a plaintiff need only show "a continuing physical invasion of the property." *Bakus*, 634 So. 2d at 642; *Pembroke Center*, 64 So. 3d at 740. *See also Hadar*, 2016 WL 4503343 at *4 ("[T]he lack of substantial decrease in market value is not the only means of relief under Florida's inverse condemnation action. To the contrary, the reasoning in *Bakus* indicates an inverse condemnation claim may lie based on an ongoing physical invasion of Plaintiff's airspace based on noise pollution.").[7]

The Court finds that Plaintiff has failed to pursue available state court procedures for just compensation, and therefore, her Fifth Amendment Claim, as it relates to the required installation of a surveillance camera, is not ripe. As a result, Plaintiff does not yet establish a likelihood of success on the merits on her physical takings claim.

### b.    No Trespassing/Loitering Restriction

Plaintiff also asserted a Fifth Amendment Takings claim based on the City's prior requirement that she avoid having customers loiter and/or prowl at Bradley's Market. Plaintiff did not object to the Report's finding that this claim is unlikely to succeed on the merits. In any event, this alleged regulatory taking appears to be moot based on MPD's representation at the hearing that officers will no longer be instructed to arrest individuals inside Bradley's Market for loitering. Had the loitering issue not been moot, the Court would have analyzed it as a regulato-

---

[7]    In addition, Plaintiff may raise a federal takings claim under the Fifth Amendment in a state proceeding. The Florida court would be bound to follow federal precedent, including Supreme Court jurisprudence regarding per se physical takings. *Hadar,* 2016 WL 4503343 at *4.

ry taking.  This analysis would be more fact intensive and likely would result in a finding that the claim is not ripe for review.[8]

### C.     Irreparable Harm

Even if Plaintiff was likely to prevail on her Fifth Amendment claim, a preliminary injunction is not appropriate because Plaintiff cannot establish irreparable harm.  "An injury is 'irreparable' only if it cannot be undone through monetary remedies."  *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991).  As stated above, the Fifth Amendment does not prohibit the government from taking property.  It prohibits the government from taking property without just compensation.  Plaintiff's remedy is just compensation, a monetary remedy to be determined at a later date, based on the extent to which the City has encroached upon her property rights.  As a result, Plaintiff cannot establish irreparable harm and the motion for preliminary injunction must be denied.

## II.     Motion to Dismiss

The City has moved to dismiss Plaintiff's complaint arguing that (1) Plaintiff cannot maintain an action on behalf of Bradley's Market; (2) Plaintiff fails to state a claim under the Fourth or Fifth Amendments; (3) Plaintiff fails to state a claim for injunctive relief; (4) Plaintiff failed to comply with the pre-suit notice conditions of Florida Statute § 768.28; (5) the Court should abstain from hearing this action until the state proceedings have ended; and (6) the Court does not have jurisdiction over an appeal of the Nuisance Abatement Board.

### A.     Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S.

---

[8]  The Court notes that City's prior requirement and/or request that Plaintiff monitor those in her store based on a list provided by the City is questionable.  Plaintiff is not an arm of the police department and should not be treated as such by the City.

662, 678, 129 S.Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than unadorned, the defendant –unlawfully-harmed-me accusations." *Id*. (alteration added) (quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).  When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true.  *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997).

### B. Fictitious Name Registration

The City contends that the Court should dismiss Plaintiff's complaint because she has brought it on behalf of "Bradley's Market."  Florida Statute § 865.09 provides that "a person may not engage in business under a fictitious name unless the person first registers the name with the [Division of Corporations of the Department of State] . . . Fla. Stat. § 865.09 (3).  The City argues that Plaintiff never registered her business as Bradley's Market and attaches as an exhibit to its motion a record from the Florida Division of Corporations indicating that Plaintiff registered her business under the fictitious name of Bradley's **Grocery**.  The Court finds the City's argument is wholly without merit.  First, Mrs. Bradley is the Plaintiff.  She brought this action in her own name based on actions taken against her property by the Nuisance Abatement Board.

Second, the City may not rely on matters outside of the four corners of the Complaint – such as a print out from the Florida website for corporations – on a motion to dismiss. Third, and more importantly, the City's argument is specious. As the City details in its own motion, "[t]he purpose of the fictitious name statute is to provide notice to one dealing with business of the real party in interest . . ." [ECF No. 9 at pg. 3]. The City was clearly on notice that it was dealing with Mrs. Bradley and her property. While the Complaint might inadvertently refer to her store as Bradley's Market as opposed to Bradley's Grocery, there is no actual dispute that Mrs. Bradley is the named plaintiff or that the City, via the Board, has issued orders against Mrs. Bradley's property. Accordingly, the motion must be denied on this ground.

### C.     Fourth Amendment Claim

In its analysis of the Plaintiff's Motion for Preliminary Injunction, the Court found that the Fourth Amendment Claim was not likely to succeed on the merits because it now appeared moot in light of the City's statements on the record. However, for purposes of the Motion to Dismiss, the Court cannot look beyond the allegations in the Complaint. The Complaint alleges that the Nuisance Abatement Board required her to install security cameras which allow for the Miami Police Department to receive uninterrupted remote-live feed access to the *property*. [ECF No. 1 at ¶ 12 (emphasis added)]. While the City represented to the Court that it was only seeking remote-live feed access to the public sidewalk abutting the property, the Complaint alleges something broader. To the extent the Plaintiff alleges that the City seeks uninterrupted surveillance of her property, without a warrant, she states a claim for a Fourth Amendment Violation. *See U.S. v. Jones*, 565 U.S. 400, 405 (2012) (finding video surveillance is a "search or seizure within the

meaning of the Fourth Amendment.").[9]  Accordingly, the motion to dismiss Count I must be denied.

### D. Fifth Amendment Claim

As detailed above, the Court finds that Plaintiff's Fifth Amendment claim is not ripe. Accordingly, the motion to dismiss Count II must be granted on this ground.

### E. Injunctive Relief

As detailed above, Plaintiff cannot establish irreparable harm for any of her claims. Without irreparable harm, Plaintiff cannot establish a claim for injunctive relief. Accordingly, Defendant's motion to dismiss Plaintiff's claim for injunctive relief (Count IV) is granted.

### F. Florida Statute § 768.28(6)

The City argues that Plaintiff's claims are barred by Florida Statute § 768.28, which requires that a plaintiff provide notice in writing to the state agency or municipality before bringing a claim. Fla. Stat. § 768.28(6). This statute has been interpreted to cover tort actions and other common law claims against the government. *Schaeffer v. Sch. Bd. of Broward Cty., Fla.*, 69 F. Supp. 3d 1327, 1330 (S.D. Fla. 2014) ("the notification requirement applies solely to state-law tort claims"); *Bifulco v. Patient Bus. & Fin. Servs., Inc.,* 997 So. 2d 1257, 1258 (Fla. 5th DCA 2009) *approved and remanded,* 39 So. 3d 1255 (Fla. 2010) ("The sole purpose for the enactment of section 768.28 was to waive sovereign immunity for breaches of common law torts."). Plaintiff's remaining claims against the City are for Constitutional violations, brought via § 1983, none of which fall under the purview of the statute.[10] Therefore, § 768.28 and its notice requirements are not applicable. *City of Fort Lauderdale v. Scott*, 773 F. Supp. 2d 1355,

---

[9] The Court notes that, based on the evidence presented at the preliminary injunction hearing, Plaintiff's Fourth Amendment claim will likely fail following discovery.

[10] As detailed below, the Court abstains from exercising jurisdiction over Plaintiff's appeal of the Board's order.

1360 (S.D. Fla. 2011) ("Under federal law, the presuit notice requirement does not apply to § 1983 claims.") (citing *Majette v. O'Connor,* 811 F.2d 1416, 1418 (11th Cir. 1987)). Accordingly, the motion must be denied on this ground.

### III.  Jurisdiction and Abstention

The City has asserted that the Court does not have jurisdiction and/or should abstain from exercising jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine and the *Younger* doctrine. "Both the *Rooker-Feldman* doctrine and the *Younger* doctrine are extremely narrow exceptions to the federal courts' 'virtually unflagging' duty 'to adjudicate claims within their jurisdiction.'" *Green v. Jefferson County Commission,* 563 F.3d 1243, 1245 (11th Cir. 2009) (quoting *New Orleans Pub. Serv. Inc. v. Council of the City of New Orleans*, 491 U.S. 350 (1989).

The *Rooker-Feldman* doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Plaintiff is not a "state-court loser." Indeed, the state court has yet to rule on Plaintiff's appeal of the Board's ruling. Therefore, the *Rooker-Feldman* doctrine does not apply. *See Green*, 563 F.3d at 1250.

The City also asks the Court to abstain from exercising jurisdiction over Plaintiff's claims in light of the pending state court proceeding. The *Younger* abstention doctrine provides that federal courts should abstain from exercising jurisdiction over civil and administrative proceedings that are pending in state courts when (1) the state proceedings are ongoing; (2) the state proceedings implicate an important state interest; and (3) the party can pursue their federal claims in

the state court proceeding. *Younger v. Harris*, 401 U.S. 37 (1971). "The *Younger* doctrine does not require abstention merely because a federal plaintiff, alleging a constitutional violation in federal court, filed a claim under state law, in state court, on the same underlying facts." *Wexler v. Lepore*, 385 F.3d 1336, 1340 (11th Cir. 2004). The goal of the doctrine is to prevent "federal courts from being the grand overseers of state courts and court-like administration." *Id.* at 1341. However, the doctrine "is not triggered in a civil context unless the federal injunction requested would create an '*undue* interference with state proceedings.'" *Green*, 563 F.3d at 1251 (quoting *New Orleans Pub. Serv. Inc.*, 491 U.S.at 359).

The Court finds that, with respect to Plaintiff's remaining Fourth Amendment claim, *Younger* abstention is not required. The Court does, however, decline to exercise supplemental jurisdiction over Count V, Plaintiff's appeal of the Board's order, as Plaintiff is already pursing an appeal in the state court. In addition, in light of the potential inverse condemnation proceeding in state court, the Court finds the most efficient course of action for this case is to stay resolution of Plaintiff's constitutional claims pending the Appellate Division of the Eleventh Judicial Circuit's ruling on Plaintiff's Writ of Certorari and Plaintiff's pursuit of inverse condemnation proceedings.

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

(1) The Report and Recommendation [ECF No. 15] is adopted in part;

(2) Plaintiff Corine Bradley's Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 6] is DENIED. Defendant City of Miami's Motion to

       Dismiss is GRANTED in part and DENIED in part.  Counts II, III, and IV are dismissed.  The Court declines to exercise supplemental jurisdiction over Count V.

(3)      This action is STAYED pending a ruling by the Appellate Division of the Eleventh Judicial Circuit's ruling on Plaintiff's Writ of Cert.

(4)      This action is CLOSED for administrative purposes.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of July, 2017.

                                  DARRIN P. GAYLES
                                  UNITED STATES DISTRICT JUDGE